# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

VINCENT H. PINDER,

     Plaintiff

v.

HAROLD MIKE BYRNE, et. al.,

     Defendants

Case No.: 3:16-cv-00742-MMD -WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 55

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants Wayne Oakley's and Melissa Travis' Motion for Summary Judgment. (ECF Nos. 55, 55-1 to 55-23, 57-1, errata at 60-1.) Plaintiff filed a response. (ECF No. 77, 77-1.) Defendants filed a reply. (ECF No. 78.)

After a thorough review, it is recommended that the motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Second Amended Complaint (SAC), ECF No. 9.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)

Service was accepted for Wayne Oakley and Melissa Travis by the Attorney General's Office, but service was not accepted on behalf of Randall Schultheis or Harold Byrne. Schultheis

and Bryne were dismissed for lack of service (ECF No. 43); however, after defendants Oakley and Travis filed their motion for summary judgment, the Attorney General's Office indicated that it was accepting service for Byrne and Byrne joined in Oakley's and Travis' answer. (ECF Nos. 72, 73.) At a hearing on March 19, 2020, the court extended the discovery and dispositive motions with respect to Byrne only. (ECF No. 74.) Therefore, the action is proceeding with respect to Oakley, Travis and Byrne; however, the instant motion was only filed on behalf of Oakley and Travis.

When the court screened the SAC, it allowed Plaintiff to proceed with the following claims: (1) an Eighth Amendment conditions of confinement claim against Oakley based on allegations that Oakley disregarded risks to his safety when he ordered him into a dangerous compactor, exposed him to very cold and snowy weather without adequate clothing and shoes and denied him restroom, food and water breaks while working on the labor yard crew; (2) a retaliation claim against Oakley based on allegations that Oakley took adverse action against him because Plaintiff had filed grievances against Oakley; (3) an Eighth Amendment deliberate indifference to serious medical needs claim against Byrne based on allegations that Byrne knew Plaintiff was being denied medical care for pain he suffered after a fall, but denied him medical care; (4) a retaliation claim against Byrne based on allegations that in retaliation for filing an emergency grievance requesting pain medication, Byrne had him sent to stay in the infirmary for six days without medical care or his property; (5) and retaliation claims against Byrne and Travis based on allegations that Byrne refused to properly classify Plaintiff because of his grievances and lawsuit and sent Plaintiff to administrative segregation when Plaintiff pointed out the retaliatory conduct, and Travis wrote Plaintiff up because Plaintiff pointed out some of the retaliation by Byrne. (ECF No. 14.)

Plaintiff alleges that on December 22, 2015, he filed a grievance against defendant Oakley for abusive language. That same day, he slipped on the snow and fell while he was working. When he was sent to the infirmary, all of his property was taken, including his thermal set, work boots, a jacket and work gloves. The only clothing he had left were tennis shoes, jeans, a short-sleeved shirt, and a sweater. When Plaintiff was released from the infirmary and went back to work, he asked his work supervisor, Oakley, for a thermal set, work boots, gloves and jacket. Oakley denied his request. For over a month, in the middle of winter, he had to work in the freezing conditions and snow wearing inadequate clothing and shoes. Oakley also denied Plaintiff restroom breaks and was not allowed to eat or drink water during work. Oakley further ordered Plaintiff to get into the garbage compactor when it got stuck, even though there were signs instructing people not to get into the compactor because it was dangerous to do so.

On February 7, 2017, knowing Plaintiff had filed a grievance against him, Oakley wrote Plaintiff up, falsely stating that Plaintiff had refused to work and Oakley caused Plaintiff to be sent to administrative segregation and lose his job.

Plaintiff also avers that on December 23, 2018, he filed an emergency grievance requesting aspirin for his back pain and headache because the nurse did not bring him any at pill call. He alleges that in retaliation for filing the emergency grievance, Byrne had Plaintiff sent to stay in the infirmary for six days without any medical care. He claims that Byrne knew he had requested the aspirin because of his fall and knew he would not have his property or receive medical care while in the infirmary.

Plaintiff goes on to allege that in 2013, he filed a civil rights complaint against ESP staff and administration, which Byrne knew about, and Plaintiff then began to be subject to harassment by Byrne and his staff. Plaintiff began filing grievances against Byrne regarding his

classification related to transfers, being in general population, and working. Plaintiff claims that Byrne instructed his staff to deny Plaintiff's requests based on his disciplinary history. When plaintiff saw Travis and Byrne for classification on March 16, 2017, Plaintiff told Byrne he had been disciplinary free for over two years, and said that Byrne was trying to deprive him of things such as access to the law library because of his grievances and lawsuits. Plaintiff avers that Byrne retaliated against him for these comments by having him sent to administrative segregation. He contends that Travis retaliated against him for these comments by writing him up for threats against Byrne.

Defendants Oakley and Travis move for summary judgment, arguing: Oakley's actions did not violate Plaintiff's Eighth Amendment rights; neither Oakley nor Travis retaliated against Plaintiff; Plaintiff failed to exhaust his administrative remedies with respect to his retaliation claim against Travis; and they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

1      "The purpose of summary judgment is to avoid unnecessary trials when there is no

2  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

3  F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

4  of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

5  U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

6  one party must prevail as a matter of law"). In considering a motion for summary judgment, all

7  reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

8  *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

9  *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

10  nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

11  477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

12  determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

13  *Anderson*, 477 U.S. at 249.

14      In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

15  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

16  come forward with evidence which would entitle it to a directed verdict if the evidence went

17  uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

18  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

19  *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

20  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

21  defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

22  an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

23

1    party cannot establish an element essential to that party's case on which that party will have the

2    burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

3         If the moving party satisfies its initial burden, the burden shifts to the opposing party to

4    establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

5    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

6    dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

7    be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

8    *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

9    (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

10   by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

11   U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

12   pleadings and set forth specific facts by producing competent evidence that shows a genuine

13   dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

14                 **III. DISCUSSION**

15   **A. Eight Amendment Conditions of Confinement - Oakley**

16        **1. Standard**

17         The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S.

18   Const. amend VIII. "It is undisputed that the treatment a prisoner receives in prison and the

19   conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth

20   Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511

21   U.S. 825, 832 (1994).

22         Although conditions of confinement may be restrictive and harsh, they may not deprive

23   inmates of "the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S.

337, 347 (1981). Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The circumstances, nature, and duration of a deprivation of … necessities must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2000).

Where a prisoner alleges injuries stemming from conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and subjective component. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834 (citation omitted). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835.

**2. Analysis**

Plaintiff's Eighth Amendment claim against Oakley has three components: (a) that Oakley allegedly denied Plaintiff warm clothing while working outside during the winter months from December to February; (b) that Oakley denied Plaintiff food and restroom breaks while working during these months; and (c) that Oakley made him get into the trash compactor. The court will address each component of Plaintiff's claim, in turn.

Preliminarily, though, the court will turn to the arguments made in Defendants' reply brief: (1) that Plaintiff's opposition relies on inadmissible evidence, citing Federal Rule of Evidence 901(b)(1) for the proposition that a proponent must produce evidence sufficient to support a finding that it is what it purports to be, and Plaintiff submitted documents without accompanying testimony or authentication; and (2) that Plaintiff's conclusory and self-serving statements are insufficient to state a genuine dispute of material fact.

Insofar as Defendants object to Plaintiff's declaration, "declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (citing *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (holding that district court erred in disregarding declarations as "uncorroborated and self-serving")). "Although the source of the evidence may have some bearing on its credibility, and thus on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Id*.

"The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Id*. (citing *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059, n. 5 (9th Cir. 2002) (court properly disregarded declaration that included facts beyond the declarant's personal knowledge); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

In *Nigro,* the Ninth Circuit concluded that the declaration of Niego, albeit uncorroborated and self-serving, was sufficient to establish a genuine dispute of material fact, and the district court erred in disregarding it in granting Sear's motion for summary judgment. *Id*. The weight to

be assigned to the self-serving evidence "is to be assessed by the trier of fact at trial, not to be a basis to disregard the evidence at the summary judgment stage." *Id*. at 499. Thus, the court will consider Plaintiff's declaration, albeit self-serving, to determine whether he has raised a genuine dispute of material fact.

Defendants also argue that Plaintiff relies on evidence without accompanying testimony to authenticate the evidence. The exhibits Plaintiff presents include his institutional kites and responses, grievances and responses; NDOC regulations; NDOC inventory transfer forms; classification hearing notices; disciplinary proceeding forms and appeals correspondence; and copies of pages of his other court filings. Some of these are duplicates of Defendants' own exhibits. Under Federal Rule of Evidence 901(b)(4), the authenticating or identifying requirement of Rule 901(a) may be satisfied my various mechanisms, including, "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). Plaintiff's exhibits are mostly forms generated by NDOC that would also be in NDOC's possession, and Defendants do not point to a single one of Plaintiff's exhibits and claim that it is not what it purports to be. Therefore, Defendants' objection/argument in opposition to Plaintiff's response is not well taken and is overruled.

### a. Clothing

"The denial of adequate clothing can inflict pain under the Eighth Amendment." *Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).

According to Oakley, on December 23, 2015, Plaintiff slipped and fell while he was working on the ESP yard labor crew. He was cleared by medical and returned to his unit. (ECF Nos. 57-1, 55-1.) That same day, he filed an emergency grievance claiming medical issues and he was moved to the infirmary for observation, where he stayed until December 28, 2015. (ECF Nos. 55-2, 55-4 at 4.) When he returned to the yard labor crew after discharge from the infirmary, he no longer had his issued work clothing, as those items were confiscated in accordance with ESP's procedures. (ECF Nos. 55-4, 55-5 at 7.)

While Plaintiff asserts that Oakley refused to issue him new work clothes, but Oakley states in his declaration that he was not in charge of issuing work clothing to inmates on the yard labor crew, as this was within the purview of the laundry department, and if the issue came up he would instruct the inmate to kite laundry for the items. (Oakley Decl., ECF No. 55-6.)

According to Plaintiff, he started working on the night shift yard labor crew after he was classified to do so on October 12, 2015. (ECF No. 77 at 31.) At that time, he was issued a thermal top and bottom, a pair of work boots, a jacket, and a pair of work gloves from the laundry room, which he claims was also authorized by ESP night shift yard supervisor Oakley. (Pl. Decl., ECF No. 77 at 25 ¶ 5.) On December 22, 2015, he slipped and fell, and was subsequently taken to the infirmary, where he stayed until December 28, 2015. When he was released he returned to his job on the night shift yard labor crew, he did not have his work attire and requested it from Oakley, and Oakley denied his request. (*Id.* at 26 ¶¶ 11, 12.) Plaintiff claims that from that time until February 4, 2016, he had to work in below freezing temperatures with white out conditions. (*Id.* ¶ 13.)

Oakley has submitted evidence that he was not responsible for issuing clothing, as that was the purview of the laundry department. In his response, Plaintiff states that he asked Oakley

for his work attire when he returned to work on December 28, 2016, but Oakley denied his request. He does not address, however, whether he sent a kite or otherwise inquired about a new work attire issuance from the laundry department. Nor does he provide evidence to refute that it was the laundry department, and not Oakley, that would have been responsible for issuing new work attire to him. When an official is sued under 42 U.S.C. § 1983, the inmate "must show that each defendant personally played a role in violating the Constitution." *Hines v. Youseff*, (9th Cir. Feb. 1, 2019) (citing *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). Plaintiff has not refuted that it was not within Oakley's purview to issue Plaintiff new work attire. Therefore, the court finds that Plaintiff has not raised a genuine dispute of material fact as to the claim that Oakley knew of and disregarded a risk of harm to Plaintiff when he denied Plaintiff's request for work clothing. Summary judgment should be granted in Oakley's favor as to this component of Plaintiff's Eighth Amendment claim.

### b. Food & Restroom Breaks

Plaintiff alleges that while he was working the yard labor crew under Oakley from December 28, 2015, until February 4, 2016, there were no scheduled restroom breaks and when he asked Oakley, he was denied and Plaintiff had to go to the bathroom outside in below-freezing temperatures. In addition, he avers that there were no food or water breaks during work hours.

Oakley's declaration does not address Plaintiff's allegation that Oakley denied him restroom breaks or access to food or drink during work hours. Instead, the opposition merely argues that even if Oakley did deny Plaintiff bathroom or food and water breaks on occasion

during work, this alone, or in combination with other factors, does not demonstrate that Oakley knew of and disregarded an excessive risk to Plaintiff's health or safety. (ECF No. 55 at 9.)

In his own declaration, Plaintiff states that from the end of December 2015 until February 2016, Oakley would deny him food and water breaks while working the ESP night shift doing yard labor. He would also deny Plaintiff restroom breaks or would instruct Plaintiff to urinate outside in freezing temperatures. (Pl. Decl., ECF No. 77 at 26 ¶¶ 14, 15.)

Only deprivations of the minimal civilized measure of life's necessities are sufficient to violate the Eighth Amendment. *Johnson*, 217 F.3d at 731. These are "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. As was mentioned above, the court should consider the circumstances, nature and duration of a deprivation of these necessities. *Johnson*, 217 F.3d at 731. "The more basic the need, the shorter time it can be withheld." *Hoptowit v. Ray*, 682 F.2d 1287, 1259 (9th Cir. 1982).

In *Hope v. Pelzer*, 536 U.S. 730, 757 (2002), the Supreme Court found an obvious Eighth Amendment violation when prison officials handcuffed an inmate to a hitching post for seven hours under prolonged sun exposure, without water or restroom breaks. The Court noted that the lack of water or restroom breaks "created a particular risk of discomfort or humiliation." *Id.*

On the other hand, temporary delays in allowing a prisoner to use a restroom or have access to food and water, may fall short of establishing a constitutional violation. *See Johnson*, 217 F.3d at 733 (toilets can be unavailable for some period of time without violating the Eighth Amendment); *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (denial of water and bathroom for two eight-hour periods on two days was not cruel and unusual punishment);

*Harley v. Quindiahjen*, No. 19cv1607-MMA (LL), 2019 WL 5578232, at *4-5 (S.D. Cal. Oct. 29, 2019) (denial of access to water and a functioning toilet for less than a day was insufficient to state an Eighth Amendment claim); *Salinas v. County of Kern*, 1:18-cv-00235-BAM (PC), 2018 WL 5879703, at *4 (E.D. Cal. Nov. 2018) (denial of access to restroom and water for approximately nine hours on a single day is insufficient to state an Eighth Amendment claim); *Saenz v. Reeves*, No. 1:09-cv00557 BAM PC, 2012 WL 4049975, at *14 (E.D. Cal. Sept. 13, 2012) (denying prisoner access to toilet and water for five and one half hours on one occasion and four and one half hours on a separate occasion, while in a holding cell, were not sufficient to rise to the level of sufficiently serious deprivation to violate the Eighth Amendment); *Gunn v. Tilton*, No. CV 08-1039-phx-SRB, 2011 WL 1121949, at *4 (E.D. Cal. Mar. 23, 2011) (denial of access to water for six hours and restroom for three to four hours did not violate the Eighth Amendment).

Oakley did not meet his own burden to establish there is no genuine dispute as to whether he violated Plaintiff's Eighth Amendment rights in regard to providing food and water and restroom breaks while Plaintiff was working under his supervision from December 28, 2016, through February 4, 2017. A party asserting that a fact cannot be genuinely disputed must support the assertion by citing to particular materials in the record or showing the materials cited do not establish the presence of a genuine dispute, or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A), (B). Oakley did not properly support his motion as to this component of Plaintiff's Eighth Amendment claim.

For example, Oakley does not ever state whether he in fact denied Plaintiff access to food and water and restroom breaks during this time or point to evidence that he did not do so, but instead argues that even if he did do so occasionally, this does not violate the Eighth

Amendment. Plaintiff, on the other hand, submits a declaration stating that Oakley denied him restroom and food and water breaks during his work for the yard crew under Oakley's supervision for over a month. That being said, neither party specifically addresses how long Plaintiff was working when he was denied restroom, food and water breaks, or how often this in fact occurred. In other words, the court presently has no particular information about the circumstances, duration and nature of the alleged deprivation to consider whether there was an Eighth Amendment violation.

Since Oakley did not meet his burden, the motion for summary judgment should be denied as to this component of Plaintiff's Eighth Amendment claim.

### c. Trash Compactor

Plaintiff alleges that Oakley threatened to fire him if he did not jump in the compactor when it got stuck, which he claims was not part of his job duties. Plaintiff avers there were signs that said people should not enter or jump into the machine as it may cause injury or death.

Prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

According to Oakley, there are no signs posted on trash compactors warning personnel not to enter the compactors. He states that occasionally, with the ram closed and key removed from the control panel, inmates would enter the compactor under supervision to clear obstructions. Oakley asserts that this is safe and does not compromise security or put anyone at risk of injury. (Oakley Decl., ECF No. 55-6.)

Plaintiff states in his declaration that Oakley would force him to jump in the trash compactor when it got stuck, and would threaten to fire Plaintiff if he did not." (Pl. Decl., ECF

No. 77 at 26 ¶ 16.) Plaintiff argues that the fact that Oakley removed the key from the control panel shows that Oakley knew of a risk to his safety.

Oakley presents evidence that there was no threat to Plaintiff's safety in requiring him to go into the trash compactor under these circumstances. Plaintiff presents no facts to refute this evidence, and instead only suggests that there was a risk to him if the key had been in the control panel, which was not the case. Plaintiff has not raised a genuine dispute of material fact in response to Oakley's motion for summary judgment. Therefore, summary judgment should be granted in Oakley's favor as to this component of the Eighth Amendment claim.

**B. Retaliation**

### 1. Standard

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id.* (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)).

### 2. Oakley

According to Oakley, Plaintiff filed an emergency grievance against Oakley asserting that Oakley used abusive language toward Plaintiff, referring to him as a "dumbass" and a "lazy mother*****."[1]

Oakley states that the grievance was denied on the basis that it did not present a threat to safety, and Plaintiff was told he could pursue the grievance through non-emergency channels. Plaintiff then filed an informal grievance regarding Oakley's abusive language and it was denied at all levels.[2]

Six weeks later, Oakley issued a notice of charges to Plaintiff asserting that Plaintiff refused to perform his duties on the yard labor crew. (ECF No. 55-7.) Oakley asserts that Plaintiff initially agreed to a negotiated guilty plea for a suspended sentence (ECF No. 55-11), but subsequently said he had an upcoming parole hearing and would not enter a guilty plea (ECF No. 55-8). Oakley acknowledges that the hearing officer ultimately dismissed the charges, but states that this was on procedural grounds. (ECF No. 55-11.)

While Plaintiff alleges that Oakley's initiation of the notice of charges was retaliatory, Oakley argues that Plaintiff never filed a grievance alleging Oakley initiated the charges in retaliation for his earlier grievances.[3] Oakley points out that while the notice of charges was

---

[1] Oakley refers to Defendants' Exhibit 5, but Exhibit 5 only contains one page of a grievance history report and does not contain the grievance referenced. Plaintiff provides the emergency grievance at ECF No. 77 at 33.

[2] Again, neither this grievance nor the summary in the inmate grievance history report is contained within Defendants' exhibits. Plaintiff does provide the grievance and responses at ECF No. 77 at 91-104.

[3] Curiously, while Oakley asserts Plaintiff did not file a grievance on this issue, he does not include an argument that Plaintiff failed to exhaust his administrative remedies with respect to this retaliation claim.

16

1   ultimately dismissed on procedural grounds, Plaintiff had previously agreed to plead guilty,

2   which shows that the filing of the notice of charges was justified.

3          Plaintiff asserts that he filed an emergency grievance against Oakley for abusive language

4   on December 22, 2015. (ECF No. 77 at 33.) It was denied as not being an emergency, and on

5   December 26, 2015, he filed an informal grievance against Oakley on the same basis. (Pl. Decl.,

6   ECF No. 77 at 25 ¶ 10; ECF No. 77 at 91-93.) Then, Oakley denied Plaintiff adequate clothing,

7   as well as food, water and restroom breaks in below freezing temperatures, between

8   December 29, 2015, and February 4, 2016, when Plaintiff was moved pending disciplinary

9   charges for a refusal to perform his work requirements. (ECF No. 77 at 106.) Plaintiff asserts that

10  Oakley falsely claimed that Plaintiff was refusing to work and had Plaintiff sent to administrative

11  segregation and wrote him up on a notice of charges for the alleged work refusal. (Pl. Decl., ECF

12  No. 77 at 26 ¶ 17.) The charges were ultimately dismissed. (*Id.* ¶ 18.) The document noting the

13  dismissal of charges states that the charges were dismissed due to inconsistency in the

14  preliminary and disciplinary hearings and because the time frame was overdue. (ECF No. 77 at

15  112.)

16         Plaintiff points to the close proximity in time between the protected activity and the

17  adverse action. He also argues there was no legitimate correctional goal for writing him up and

18  sending him to administrative segregation as the charges were dismissed.

19         There is a genuine dispute of material fact as to whether Oakley retaliated against

20  Plaintiff. First, Oakley claims that Plaintiff was written up and moved to administrative

21  segregation because he refused to perform his work duties; however, Plaintiff disputes this and

22  claims he did not refuse to perform his work duties. In addition, this adverse action occurred just

23  over a month after Plaintiff filed a grievances complaining about Oakley's mistreatment of

17

1  Plaintiff, which is sufficient to create a triable issue. *See McCollum v. Cal. Dep't of Corr. and*

2  *Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (circumstantial evidence of retaliatory motive may be

3  considered and may include proximity in time between the protected conduct and the alleged

4  retaliation).

5      "[A]n objective standard governs the chilling inquiry; a plaintiff does not have to show

6  that 'his speech was actually inhibited or suppressed,' but rather than the adverse action at issue

7  'would chill or silence a person of ordinary firmness from future First Amendment activities.'"

8  *Brodheim v. Cry* 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Rhodes v. Robinson*, 408 F.3d

9  559, 568-69 (9th Cir. 2005)). Here, taking the facts in the light most favorable to Plaintiff, as the

10  court must in considering a motion for summary judgment, it is reasonable to conclude that

11  Oakley's action of writing Plaintiff up for charges and moving him to administrative segregation

12  would chill an inmate of ordinary firmness from filing grievances in the future.

13      There is also a dispute as to whether Oakley's conduct advanced a legitimate correctional

14  goal. Oakley maintains that it advanced the goal of disciplining wrongful behavior in the prison

15  and this is evidenced by the fact that Plaintiff initially agreed to plead guilty to the charge and

16  then changed his mind. Plaintiff, on the other hand, points out that he did not enter a guilty plea

17  and the charges were ultimately dismissed.

18      An inmate could decide to enter into a plea bargain on disciplinary charges for a variety

19  of reasons, which may or may not mean he is actually guilty of the charge against him.

20  Moreover, the disciplinary documentation states that the charges were dismissed because of the

21  time frame issues, but also because of unexplained inconsistencies between the preliminary and

22  eventual disciplinary hearing. Thus, it is unclear whether there was a legitimate correctional

23  basis for the charges brought against Plaintiff.

In light of the disputed material facts, the motion should be denied as to the retaliation claim against Oakley.

**3. Travis**

    **a. Allegations**

Plaintiff alleges that in October of 2013 he filed a civil rights action against ESP staff and administration, which Byrne knew about, and ever since then he has been subjected to harassment and retaliation by Bryne and his staff. Plaintiff began to file numerous grievances against Byrne regarding being reclassified for transfer to general population and work programs and Byrne instructed staff to deny his requests because of Plaintiff's disciplinary history, which Plaintiff alleges did not justify the denial. On March 16, 20017, Plaintiff was seen by Byrne and Travis  for reclassification, where Plaintiff asked to be transferred or sent to general population and given a job. He alleges that he explained that he was discipline free for two years and told Byrne that Byrne's objective was to deprive Plaintiff of basic needs because Plaintiff had filed grievances and a lawsuit against him. Plaintiff claims that Byrne retaliated against him by having him sent to administrative segregation. He claims that Travis retaliated against him by writing him up for threats after Plaintiff exercised his First Amendment rights.

Travis first argues that Plaintiff failed to exhaust his administrative remedies with respect to the retaliation claim, and then argues that Plaintiff cannot succeed on the merits of the retaliation claim. The court will address these arguments, in turn.

    **b. Exhaustion**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

1  remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his

2  administrative remedies irrespective of the forms of relief sought and offered through

3  administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

4          The failure to exhaust administrative remedies is "'an affirmative defense the defendant

5  must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v.

6  Bock*, 549 U.S. 199, 204, 216 (2007). Unless the failure to exhaust is clear from the face of the

7  complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in

8  part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust

9  should be raised in an "unenumerated Rule 12(b) motion").

10         The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely

11  or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion."

12  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the

13  agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."

14  *Id.* (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

15  Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison

16  grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v.

17  Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's

18  requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v.

19  Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative

20  remedies "under the PLRA despite failing to comply with a procedural rule if prison officials

21  ignore the procedural problem and render a decision on the merits of the grievance at each

22  available step of the administrative process." *Reyes*, 810 F.3d at 658.

23

Exhaustion of administrative remedies in NDOC is governed by Administrative Regulation (AR) 740, which contains NDOC's inmate grievance procedure. Inmates within NDOC are required to first try to informally resolve their issue, and then must file an informal, first, and second level grievance. (ECF No. 20.)

Travis argues that while Plaintiff appealed the findings at the disciplinary hearing stemming from the committee hearing, he never filed a grievance against Travis specifically alleging retaliation. (ECF No. 55 at 14.)

In his response, Plaintiff points to grievance 20063046137 as exhausting his administrative remedies with respect to the retaliation claim against Travis. He filed the informal level grievance on April 13, 2017, which discusses the hearing before Bryne and Travis. He specifically asserts that Travis lied in the notice of charges brought against him. (ECF No. 77-1 at 113.) The response specifically states that the charges were under investigation and Plaintiff could appeal when a finding was made by the disciplinary hearing officer. (ECF No. 77-1 at 114.) Plaintiff filed a first level grievance clarifying that it was not a disciplinary appeal, but was addressing the fact that he claimed his rights were violated against Byrne and Travis. (ECF No. 77-1 at 115.) The first level response stated that Plaintiff's rights were not violated, and that he was moved due to the pending disciplinary charges. (*Id.* at 117.) Plaintiff filed a second level grievance, which also received a response. (*Id.* at 118-119.) The grievance was not rejected on a procedural basis.

Travis does not address grievance 20063046137 in the reply brief, and it appears that Plaintiff did exhaust his administrative remedies as to the retaliation claim against Travis. Therefore, the motion should be denied insofar as it is argued that Plaintiff failed to exhaust his administrative remedies as to the retaliation claim against Travis.

### c. Merits

According to Travis, Plaintiff had a classification committee hearing on March 16, 2017, where Plaintiff was being reviewed for possible transfer consideration with an override request for violence points. Travis states that during the discussion between Plaintiff and Byrne, Plaintiff became argumentative and refused to be submitted despite having an extensive disciplinary history and not being eligible for transfer consideration until June 2018. Plaintiff was dismissed from the office with no action taken on his request when he threatened Byrne and began to make verbally abusive statements including, "I am going to sue you bitch." (ECF No. 55-15.) A segregation form states that during the hearing, Plaintiff became verbally abusive and issued threats to Byrne that he was going to sue him and began to call Byrne derogatory slurs while exiting the unit office. (ECF No. 55-16.) Plaintiff was referred for disciplinary charges of threats and Plaintiff entered a plea of not guilty, stating that he never threatened Byrne and claiming it was retaliation for filing a lawsuit against Byrne. (ECF No. 55-17.)

Plaintiff asserts that in 2013 he filed a civil rights complaint against Warden Baker and ESP staff and administration, in case number 3:13-cv-572-MMD-WGC. (ECF No. 77-1 at 28.) He asserts that he was disciplinary free for over two years from January of 2015, until March 16, 2017. (ECF No. 77-1 at 26.) In 2016, he filed several grievances about his classification status, asking that he be classified to be able to work or moved to general population. (ECF No. 77-1 at 32-38, 50-52.) In a grievance filed in December 13, 2016, he stated that he went to Sandoval to request classification to a worker unit, and Sandoval denied his request, telling him that Byrne instructed her that he could never go to the worker's unit. (ECF No. 77-1 at 62.) Byrne denied making this statement. (*Id.* at 63.) Plaintiff filed this civil rights complaint on December 21, 2016.

On March 16, 2017, Byrne and Travis held a full classification hearing for Plaintiff and during that hearing, Plaintiff claims that he explained to them that he felt that he was being deprived of his opportunity to work and program or transfer because he was suing Byrne and Baker. (Pl. Decl., ECF No. 77 at 27 ¶ 22.) He contends that Travis retaliated against him by lying and stating that he threatened Byrne, and then Travis had him sent to administrative segregation and wrote him up on charges for threatening Byrne. (*Id.* ¶ 23.) He maintains that he never threatened Byrne. (*Id.* ¶ 24.)

The classification form indicates that no decision was made on the classification request, with Travis stating that charges had been initiated against Plaintiff for making threats to Byrne. (ECF No. 77-1 at 75.) The disciplinary notice of charges form from Travis states that during the classification committee hearing Plaintiff became argumentative, and Plaintiff was dismissed when he threatened Bryne and began to make verbally abusive statements, including, "I am going to sue you bitch." (ECF No. 77-1 at 77.) In response to the charges, Plaintiff claimed that he never threatened Byrne, and claimed the charges were brought in retaliation for a lawsuit against Byrne. (*Id.* at 78.) Plaintiff was found guilty of the charge. (*Id.* at 80.)

Plaintiff appealed the disciplinary finding, asserting that the hearing was conducted outside the timeframe, that proper procedures were not followed, and that saying you are going to sue someone is not a threat. Filson responded to the disciplinary appeal and found there was sufficient evidence to support the disciplinary findings and that the policies were followed and Plaintiff was charged appropriately; however, after reviewing the totality of the evidence the charge was reduced to abuse of language. (ECF No. 77-1 at 83.)

In *Entler v. Gregoire,* 872 F.3d 1031 (9th Cir. 2017), Entler was disciplined for filing grievances where he complained of retaliatory conduct and threatened to sue and to try and

initiate a criminal case against prison officials. The magistrate judge concluded that he could not

pursue the retaliation claim because the defendants had a legitimate correctional interest in

punishing the inmate for the threats, and also found the defendants were entitled to qualified

immunity because the rights were not clearly established when the inmate was disciplined. *Id.* at

1038. On appeal, the Ninth Circuit acknowledged that "[r]unning a prison is an inordinately

difficulty undertaking," … and that courts should "accord adequate deference to the judgment of

prison authorities." *Id.* at 1038-1039 (internal quotation marks and citations omitted). The court

concluded, however, that it could not "condone punishing a prisoner for simply threatening to

sue if his grievances are not addressed." *Id.* at 1039. The Ninth Circuit emphasized that "[t]he

most fundamental of the constitutional protections that prisoners retain are the First Amendment

rights to file prison grievances and to pursue civil rights litigation in the courts, for '[w]ithout

those bedrock constitutional guarantees, inmates would be left with no viable mechanism to

remedy prison injustices.'" *Id.* (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005)).

The court reiterated that the constitutional right to redress of grievances "embraces

threats to sue[.]" *Id.* (citing *Jones v. Williams*, 791 F.3d 1023, 1035-36 (9th Cir. 2015)). The

court noted that it had held in *Jones* that dismissal of a retaliation claim was improper because

the inmate's complaints of discrimination to his supervisors and threats that he intended to sue

them were constitutionally protected. *Id.*

Travis does not deny that she was a state actor who took adverse action against Plaintiff.

Travis argues that the action was not taken against Plaintiff because of his protected activity, but

instead it was justified since there was evidence to support the findings that Plaintiff had made

threats to Byrne at the classification hearing. In addition, she argues there was a legitimate

correctional purpose behind her conduct: the enforcement of discipline.

Here, Plaintiff had filed grievances and lawsuits against Byrne, and at the classification hearing he is alleged to have threatened to sue Byrne, and says that he told Byrne and Travis that he thought they were denying his classification request because of his grievances and lawsuits. He had a right to file grievances and lawsuits, and to threaten to sue for complaints he claimed were not addressed; therefore, there is evidence that he was disciplined because of his protected activity. *Entler*, 872 F.3d at 1041. Similarly, the fact that Plaintiff was found to have threatened Byrne by stating he would sue Byrne does not mean there was necessarily a legitimate penological purpose for the disciplinary action taken against him. *See id.* at 1042 ("[I]t is illogical to conclude that prison officials may punish a prisoner for *threatening* to sue when it would be unconstitutional to punish a prisoner for *actually* suing. …[A] threat to sue—even if verbal—may not *ipso facto* rise to the level of coercion to support prison retaliation.").

Nor does Travis plausibly contend that her actions would not have chilled the exercise of the right to seek redress of grievances; instead, she simply asserts that because the facts show she was justified in filing the charges, it would not chill his First Amendment rights. Taking the facts in the light most favorable to Plaintiff, however, disciplining an inmate for protected First Amendment activity would chill an ordinary inmate from pursuing his First Amendment rights in the future.

Therefore, summary judgment should be denied as to the retaliation claim against Travis.

**C. Qualified Immunity**

The qualified immunity analysis consists of two steps: (1) viewing the facts in the light most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017).

Preliminarily, as was pointed out above, there are outstanding factual issues that preclude the court from proceeding with the qualified immunity argument as to Plaintiff's claim that Oakley violated Plaintiff's Eighth Amendment rights when he denied Plaintiff restroom and food and water breaks. *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009).

With respect to the retaliation claims, viewing the facts in the light most favorable to Plaintiff, it could be concluded that Oakley and Travis violated Plaintiff's rights. As was indicated above, if a trier of fact determines that the adverse action was taken against Plaintiff because of his protected conduct, and that it did not in fact further a legitimate correctional goal, then Oakley and Travis could be found to have retaliated against Plaintiff.

Furthermore, it was clearly established that there was a constitutional right to pursue grievances or civil litigation. *See Entler v. Gregoire*, 872 F.3d 1031, 1041-42 (9th Cir. 2017), noting earlier precedent on this issue. In addition, as *Entler* pointed out, it was clearly established that an inmate has a right to threaten civil litigation if his complaints are not addressed, and has "the time-honored right to pursue civil litigation." *Id.* at 1041, 1042 (citation omitted).

Therefore, Defendants are not entitled to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' Motion for Summary Judgment (ECF No. 55) as follows:

(1) the motion should be **GRANTED** as to the Eighth Amendment claim against Oakley based on the allegation that Oakley denied him adequate clothing for work in winter conditions, and based on the allegation that Oakely required him to jump into the trash compactor;

(2) the motion should be **DENIED** as to the Eighth Amendment claim based on the allegation that Oakley denied Plaintiff food, water and restroom breaks while he was working under Oakley's supervision from December 28, 2016, to February 4, 2017; and

(3) the motion should be **DENIED** as to the retaliation claims against Oakley and Travis.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.


Dated: June 24, 2020

William G. Cobb
United States Magistrate Judge

27